UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA DELGIUDICE, | ) NO. EDCV 04-1528-MAN |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND ORDER |
| | ) |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

Plaintiff filed a Complaint on December 27, 2004, seeking review of the denial by the Social Security Commissioner ("Commissioner") of her claim for Supplemental Security Income benefits ("SSI"). On February 7, 2005, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636. The parties filed a Joint Stipulation ("JS") on October 19, 2005, in which: Plaintiff seeks an order reversing the Commissioner's decision and/or remanding the case for further appropriate proceedings; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' JS under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff protectively filed her current application for SSI on January 15, 2002.[1] (A.R. 50-55.) Plaintiff claims to have been disabled since January 1, 2001, due to several impairments, including arthritis in the lumbar spine, anxiety, chest pains, anemia, and fainting spells. (A.R. 13, 61.) Plaintiff has no past relevant work experience. (A.R. 16.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. (A.R. 34-37, 40-43.) On September 2, 2003, Plaintiff, who was represented by counsel, appeared at a hearing before Administrative Law Judge F. Keith Varni ("ALJ"). (A.R. 230-56.) On September 8, 2003, the ALJ denied Plaintiff's claim for benefits. (A.R. 9-16.) On November 3, 2003, the Appeals Council denied Plaintiff's request for review of the ALJ's decision on November 3, 2003. (A.R. 5-7.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In his September 8, 2003 written decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (A.R. 15.) The ALJ determined that Plaintiff had a "questionably severe impairment" of minor degenerative changes in her musculoskeletal system, but that her impairment did not meet or equal

---

[1] Plaintiff previously filed applications for disability benefits, which were denied on May 9, 1995, and June 28, 2001. (Administrative Record ("A.R.") 30-33, 84.)

one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (A.R. 13, 15-16.) He further concluded that Plaintiff's mental impairment was not severe. (A.R. 15.)

The ALJ found that Plaintiff's complaints generally were not credible. (A.R. 15-16.) He further found that Plaintiff had the residual functional capacity to perform medium work. (*Id.*) The ALJ concluded that Plaintiff has "a limited education," was 50 years old at the time of the hearing, and has no past relevant work experience. (*Id.*) Pursuant to Medical-Vocational Rules 203.25 and 203.18, the ALJ determined that Plaintiff was not disabled. (*Id.*) Accordingly, the ALJ found that Plaintiff was not entitled to the benefits she sought. (*Id.*)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that

detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id.* at 1039-40; *see also* Morgan v. Commissioner of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges two disputed issues: (1) she contends that the ALJ failed to consider her subjective symptom testimony properly; and (2) she alleges that the ALJ erred in mechanically applying the Medical-Vocational Guidelines where significant non-exertional impairments exist. (JS at 3-4, 13.)

**A.   The ALJ Erred In Discounting Plaintiff's Subjective Symptom Testimony.**

Once a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to cause some level of pain of the type which the claimant alleges, the claimant's subjective complaints regarding the severity of her pain may not be

discredited based solely on a lack of objective medical evidence to corroborate the extent of the alleged pain. Smolen, 80 F.3d at 1281-84; Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989). This rule is based on the recognition that pain is an inherently subjective phenomenon, which cannot be objectively verified or measured and varies significantly among individuals. Bunnell, 947 F.2d at 347. Unless the evidence suggests affirmatively that Plaintiff is malingering, the ALJ must provide clear and convincing reasons for rejecting Plaintiff's excess pain or symptom testimony. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

Although the absence of objective medical findings to support the claimant's alleged degree of pain cannot be the sole reason to reject subjective complaints, it has been recognized as one valid consideration. *See* Wainwright v. Secretary of Health & Human Servs., 939 F.2d 680, 682 (9th Cir. 1991). Other factors that the ALJ may use to discredit a claimant's subjective complaints include the following: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Smolen, 80 F.3d at 1284; *see also* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002)(listing factors including: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily activities; (4) the

claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains)(citing Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).

In discounting Plaintiff's subjective allegations, the ALJ explained, in pertinent part:

> There is no evidence of a longitudinal history of a psychiatric impairment, of repeated hospitalizations, or of prolonged outpatient treatment. [Plaintiff] has neither required nor received extensive psychiatric treatment and does not use any psychotropic medication. . . .
>
> [Plaintiff's] subjective complaints are not credible and do not establish any less of a residual functional capacity. [Plaintiff] asserted pain in the neck, right major shoulder and arm, low back, and left foot. The pain is constant but helped by medications. [Plaintiff's] self-assessment of sitting 15 to 20 minutes, standing 10 minutes, walking one block, and lifting a gallon of milk, was incredible, exaggerated, and unsupported. She stated that she drops things, lies down 1/2 [of] the day watching television, has poor sleep, has pain in the top of the left foot to the bottom, feels hot, cannot wear shoes or socks but only sandals, and that medication "mellows the pain out," with no adverse side effects. [Plantiff] alleged that she blacks out two to three times per month for 15 to 20 minutes. However,

>     there is absolutely no medically determinable impairment which would cause such a phenomenon. She drives and has a California driver license without restrictions and lives in a house with her brother, daughter, and niece. [Plaintiff] denied any productive work. She goes to church once a week and said that she was sad and depressed. There is no medically determinable functionally limiting psychiatric impairment. [Plaintiff's] earnings record shows no interest in or attachment to employment.

(A.R. 15.) Plaintiff contends that the above reasons were legally insufficient to support the ALJ's finding that her testimony regarding her limitations was not credible. (JS at 3.)

Among other things, the ALJ found that there was no medically determinable impairment which would cause Plaintiff to faint. (A.R. 15.) Although Plaintiff asserts that anemia causes her fainting spells, the record does not reflect evidence that a physician ever made such a determination.[2] *See* <u>Bunnell</u>, 947 F.2d at 343 (a claimant must produce medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged symptom). In fact, Dr. Amitabh Chauhan, the treating physician, noted Plaintiff's "[q]uestionable history of syncope [i.e., loss of consciousness]." (A.R. 104.) This is a clear

---

[2] Furthermore, the record indicates that the presence of Plaintiff's anemia (*i.e.*, deficiency in the oxygen-carrying component of the blood) was not constant. For example, progress notes dated January 15, 2001, indicated that laboratory tests found Plaintiff's hematocrit level to be normal. (A.R. 105.) A state agency physician reviewed the aforementioned progress notes and determined that Plaintiff was not anemic. (A.R. 158.)

and convincing reason for discrediting Plaintiff's allegations.

The ALJ also noted the inconsistency between Plaintiff's alleged fainting spells and her unrestricted driver's license. (A.R. 15.) Plaintiff testified that she blacks out two or three times per month.[3] (A.R. 244.) However, there were no restrictions placed on her driver's license.[4] (A.R. 254-55); Smolen, 80 F.3d at 1284 (the ALJ can use ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid). This also is a clear and convincing reason for discounting Plaintiff's testimony.

The ALJ also commented on Plaintiff's earning record as a reason for discounting Plaintiff's credibility. (A.R. 15, 57-59.) Specifically, the record indicates that Plaintiff did not work from 1990 to 1996. (A.R. 57-58.) Thereafter, she worked from 1997 to 1999 on a part-time basis through a temporary placement agency. (A.R. 58, 61-62.) She earned a total of $2,540.12 during those three years. (A.R. 58.) Plaintiff asserted that she stopped working at the end of 1999, because "there was no more work for [her]." (A.R. 61, 233.) Plaintiff's poor work history suggests, as the ALJ noted, that she has a lack of interest in working. *See* Thomas, 278 F.3d at 958-59 (stating that the ALJ may consider a claimant's work record in weighing the claimant's

---

[3] On January 25, 2001, Plaintiff reported that she has a history of blackouts since she was a child. (A.R. 105.)

[4] Plaintiff stated that she renewed her driver's license two or three years prior to the hearing. (A.R. 254-55.)

credibility).  This is a clear and convincing reason for disregarding Plaintiff's subjective allegations.

Although the ALJ provided several clear and convincing reasons for discounting Plaintiff's subjective symptom testimony, his remaining reasons are not legally sufficient.  The ALJ noted that Plaintiff's self-assessments of her residual functional capacity (*i.e.*, that Plaintiff could comfortably sit for about 15 to 20 minutes, stand for about 10 minutes, walk for about a block, and lift about a gallon of milk) were "incredible, exaggerated, and unsupported." (A.R. 15, 236-37.)  He did not explain, however, the bases for these conclusions. When discrediting a claimant's testimony, it is not enough for the ALJ to make only general findings; he must state what evidence suggests that the complaints are not credible.  *See* Swenson v. Sullivan, 876 F.2d 683, 688 (9th Cir. 1979).  The ALJ's above finding is wholly conclusory, broad and vague and, therefore, fails to constitute a "clear and convincing" reason.  *See* Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004)("If the ALJ finds the claimant's pain testimony not to be credible, the ALJ 'must specifically make findings that support this conclusion,' and the findings 'must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.'")(emphasis added)(citing Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001)).

Moreover, the ALJ has acknowledged the presence of objective evidence showing degenerative joint disease of Plaintiff's lower back. (A.R. 13, 103, 105, 137.)  Thus, the ALJ erred in discrediting

9

Plaintiff's testimony concerning her functional limitations merely because they were "unsupported" by clinical findings. *See* Smolen, 80 F.3d at 1281-84 (the claimant's subjective complaints regarding the severity of her pain may not be discredited based solely on a lack of objective medical evidence to corroborate the extent of the alleged pain).

The ALJ also improperly discounted Plaintiff's allegations of depression by concluding that there was "no medically determinable functionally limiting psychiatric impairment."[5] (A.R. 15.) The ALJ found that Plaintiff did not have a "severe" mental impairment, because there was "no evidence of longitudinal history of a psychiatric impairment, of repeated hospitalizations, or of prolonged outpatient treatment." (*Id.*) Given the record in this case, as discussed below, these reasons are neither clear and convincing nor supported by substantial evidence in the record.

The record is replete with Plaintiff's complaints to her treating physicians of stress and anxiety. (*See, e.g.,* A.R. 203 -- on September 11, 2001, Dr. Chauhan noted that Plaintiff gets very anxious due to her physical ailments and diagnosed her with probable anxiety disorder; A.R. 111 -- on December 19, 2001, Dr. Wang noted Plaintiff's complaint of anxiety; A.R. 104 -- on January 15, 2002, Dr. Chauhan noted that

---

[5] The ALJ's finding that Plaintiff's mental impairment was not severe at the step two level was based on the opinion of Dr. Melvin Morgan, a state agency physician. (A.R. 15.) Dr. Morgan opined that Plaintiff's mental impairments were not severe, citing that Plaintiff had only mild difficulties in maintaining concentration, persistence, or pace. (A.R. 152, 154.) Dr. Morgan's opinion was based on the psychiatric evaluation administered by Dr. Reynaldo Abejuela. (A.R. 127-32, 154.)

Plaintiff felt anxious; A.R. 128 -- on April 26, 2002, Plaintiff reported that she felt depressed and anxious and that she had concentration and memory problems; A.R. 195 -- on December 31, 2002, Plaintiff reported that she felt more stressed during the holidays because of her deceased son; A.R. 192 -- on March 4, 2003, Dr. Chauhan diagnosed Plaintiff with a history of dysthymia, possible depression, and situational anxiety, and recommended psychiatric evaluation and therapy.) In short, over a two-year period, Dr. Chauhan perceived that Plaintiff may suffer from anxiety and/or depression, and suggested she receive further evaluation and treatment. The ALJ, however, ignored this evidence of record. At a minimum, he had a duty to address it and, possibly, to obtain further information from Dr. Chauhan.[6] The ALJ's selective reliance on only a portion of the medical evidence is misleading, and does not serve as a clear and convincing reason for rejecting Plaintiff's testimony. *See* Reddick v. Chater, 157 F.3d 715, 723 (9th Cir. 1998)(it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports").

---

[6] As Dr. Chauhan was a treating physician, the ALJ was not entitled to ignore his opinion, even if it was contradicted by the opinions of examining or agency physicians; rather, the ALJ was required to provide "specific and legitimate reasons that are supported by substantial evidence of record" for rejecting it. Lester, 81 F.3d at 830-31; *see also* Andrews, 53 F.3d at 1043.

Furthermore, if the ALJ had concerns about the bases for the above-noted opinion, it was the ALJ's responsibility to make the inquiries necessary to resolve those concerns. *See* Smolen, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of [the doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry . . . ."); *see also* Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)(ALJ's special duty to fully and fairly develop the record and to assure the claimant's interests are considered, even when the claimant is represented by counsel).

The ALJ also erred in rejecting Plaintiff's mental impairment allegations by citing the lack of prolonged outpatient treatment. (A.R. 15.) Even though Plaintiff has declined psychiatric medication and counseling, refusing mental health treatment is not a clear and convincing reason for discrediting Plaintiff's allegations.[7] As the Ninth Circuit observed in Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996), those afflicted with depression "often do not realize that their condition reflects a potentially serious mental illness." "As the Sixth Circuit has noted in finding invalid an ALJ's reasons for rejecting claimant's assertions about his depression, '[a]ppellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") *Id.* (quoting Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).

Furthermore, nothing in the record supports the ALJ's conclusion that, because Plaintiff was not repeatedly hospitalized for mental illness, her claimed mental limitations should be disregarded. (A.R. 15.) "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on [a claimant's] ability to work.'" Smolen, 80 F.3d at 1290 (citing Social Security Ruling 85-28 and Yuckert

---

[7] On December 31, 2002, Plaintiff stated that she did not wish to receive any medication or psychological counseling. (A.R. 195.) On March 4, 2003, Dr. Chauhan suggested therapy and evaluation with a psychologist and psychiatrist, but Plaintiff declined. (A.R. 192-93.) However, progress notes, also from March 4, 2003, indicate that Plaintiff was taking Zoloft. (A.R. 194.) However, the individual completing the progress notes may have mistakenly noted that Plaintiff was on Zoloft, as the record does not indicate any physician prescribing the medication.

v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)); 20 C.F.R. § 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."). The "severity" requirement is merely "a *de minimis* screening device to dispose of groundless claims." Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001)(citing Smolen, 80 F.3d at 1290). Plaintiff has not challenged the ALJ's finding, at the step two level, that her mental impairment is not "severe." In any event, however, when assessing a claimant's residual functional capacity, an ALJ must "consider the limiting effects of all of [the claimant's] impairment(s), even those that are not severe." 20 C.F.R. § 416.945(e). Even if Plaintiff's mental impairment was not "severe," the ALJ was not entitled to disregard her subjective symptom testimony regarding her limitations on the basis that her mental impairment has not required her hospitalization. Hence, the ALJ's citation to Plaintiff's lack of hospitalization is not a clear and convincing reason for rejecting Plaintiff's credibility regarding her alleged mental limitations.

Although the ALJ provided some adequate reasons for discounting Plaintiff's subjective symptom testimony, many of his reasons are not sufficient. On this record, the Court cannot say that the ALJ's rejection of Plaintiff's subjective symptom testimony, as a whole, meets the required standard and is supported by substantial evidence. Thus, the ALJ's conclusion that Plaintiff was not credible warrants reversal and remand for clarification and, as appropriate, compliance with the foregoing standards.

### B. Further Vocational Expert Testimony Likely Will Be Required On Remand.

On remand, the ALJ's assessment of Plaintiff's residual functional capacity may change, because he must reevaluate it following his reevaluation of Plaintiff's subjective symptom testimony. An ALJ must seek the testimony of a vocational expert if the claimant has non-exertional limitations. *See* Reddick, 157 F.3d at 729 (because the claimant had non-exertional limitations, it was error not to seek the testimony of a vocational expert). A vocational expert's testimony has no evidentiary value if it is not based on a claimant's complete set of limitations. *See* Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988)(in posing a hypothetical to a vocational expert, the ALJ must fully and accurately reflect all of the claimant's limitations).

Therefore, because the ultimate finding regarding Plaintiff's residual functional capacity may change and additional testimony from a vocational expert may be required, the Court does not reach the second issue raised by Plaintiff (*i.e.*, regarding whether the ALJ erred in mechanically apply the Medical Vocational Guidelines).

### C. Remand Is Required.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise

this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

Here, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors.[8] *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(where ALJ erred by discounting treating physicians' opinions, remand for further proceedings is appropriate if enhancement of the record would be useful); Tackett v. Apfel, 180 F.3d 1094, 1104 (9th Cir. 1999)(remanding case to the Commissioner in order to obtain testimony from a vocational expert based upon the claimant's non-exertional limitations); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for

---

[8] The record contains numerous citations concerning Plaintiff's obesity. (A.R. 103-04, 107, 179, 191, 192, 195, 203, 207.) On remand, the ALJ shall consider to what extent, if any, Plaintiff's obesity exacerbated her other medical impairments. *See* Social Security Ruling 02-01p (directing ALJs to consider the combined effects of obesity with other impairments under the Listing of Impairments when assessing a claimant's residual functional capacity).

15

further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 29, 2006

                                                 /s/
                                        MARGARET A. NAGLE
                          UNITED STATES MAGISTRATE JUDGE